Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| ALC WAREHOUSES LLC<br><br>Demandante-Peticionario<br><br>v.<br><br>PR TRADING & LOGISTICS LLC Y OTROS<br><br>Demandados<br><br>HON. GLORIA MARÍA DE JESÚS MACHARGO EN SU CAPACIDAD OFICIAL COMO JUEZA SUPERIOR DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA 407 DE CAROLINA<br><br>*Recurrida* | TA2025RE00008 | *Mandamus* procedente del Tribunal de Primera Instancia, Sala Superíor de Carolina<br><br>Caso Núm.: CA2024CV03880<br><br>Sobre: Desahucio por falta de pago |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 9 de octubre de 2025.

Comparece ante nos ALC Warehouses LLC (ALC o parte peticionaria) mediante un recurso de *mandamus* presentado el 25 de septiembre de 2025. En este, nos solicita que le ordenemos a la Jueza Gloria María De Jesús Machargo (Jueza De Jesús Machargo), del Tribunal de Primera Instancia, Sala Superior de Carolina (TPI), a que cumpla con su deber ministerial de resolver la *Moción en Solicitud de Sentencia Sumaria Parcial*[1] presentada el 8 de abril de 2025 por ALC.

Por los fundamentos que expresamos a continuación, resolvemos **desestimar** el recurso de *mandamus* presentado, en vista de que advino académico.

---

[1] Entrada #28 del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

**I.**

Según se desprende del recurso, el 14 de noviembre de 2024, ALC presentó ante el TPI una *Demanda de Desahucio y Cobro de Dinero*[2] contra PR Trading & Logistics LLC y Bodega Negra Corporation (PRTL), por alegado incumplimiento en el pago de las rentas pactadas y demás obligaciones derivadas del contrato de arrendamiento vigente entre las partes. El 6 de diciembre de 2024, PRTL presentó su *Contestación a Demanda*[3].

Con posterioridad, el 8 de abril de 2025, ALC presentó *Moción en Solicitud de Sentencia Sumaria Parcial*[4]. El 10 de abril de 2025, la Jueza De Jesús Machargo dictó *Orden*[5] concediéndole a PRTL un término para expresarse sobre el petitorio. Luego de múltiples incidencias procesales, el 11 de junio de 2025, ALC presentó *Moción en Cumplimiento de Orden, Informando Esfuerzos Transaccionales y en Solicitud de Adjudicación de la Moción de Sentencia Sumaria*[6]. Además, el 19 de agosto de 2025, ALC presentó *Urgente Segunda Solicitud de Adjudicación de Sentencia Sumaria Parcial*[7].

Ese mismo día, el TPI emitió una *Orden*[8] en la cual concedió a PRTL un nuevo término de veinte (20) días para expresarse. Posteriormente, estas presentaron *Moción en Cumplimiento de Orden*[9]. Finalmente, el 17 de septiembre de 2025, el TPI determinó mediante *Orden*[10] que, el término de noventa (90) días para adjudicar la *Moción en Solicitud de Sentencia Sumaria Parcial*[11] era hasta el 17 de noviembre de 2025 porque quedó sometida en la fecha que se presentó respuesta a la reconvención.

---

[2] Entrada #1 de SUMAC.
[3] Entrada #13 de SUMAC.
[4] Entrada #28 de SUMAC.
[5] Entrada #29 de SUMAC.
[6] Entrada #58 de SUMAC.
[7] Entrada #74 de SUMAC.
[8] Entrada #75 de SUMAC.
[9] Entrada #80 de SUMAC.
[10] Entrada #86 de SUMAC.
[11] Entrada # 28 de SUMAC.

Inconforme con el curso procesal antes aludido, el 25 de septiembre de 2025, la parte peticionaria presentó el recurso de *mandamus* de epígrafe. En síntesis, alegó que el término para adjudicar la *Moción en Solicitud de Sentencia Sumaria Parcial* venció el 18 de agosto de 2025. Además, arguyó que la interpretación del TPI fue errada *porque la presentación de una reconvención no altera el momento en que se considera sometida una moción de sentencia sumaria ni condiciona la adjudicación de una moción de sentencia sumaria, cuyo trámite y cómputo son independientes bajo las Reglas 36.1, 36.3 y 70*[12]. *Pretender lo contrario equivale a frustrar el propósito del trámite sumario y a desconocer la Regla 1, que impone a los tribunales la obligación de garantizar una solución justa, rápida y económica. La adjudicación de una moción de sentencia sumaria descansa exclusivamente en si, como cuestión de hecho y de derecho, su promovente logra demostrar que procede, incluso en el escenario en que la parte contra la cual se solicita no presente oposición alguna*[13].

Examinada la petición presentada y por entender que no es necesaria la comparecencia de la Jueza De Jesús Machargo, prescindimos de la misma[14] y procedemos a disponer del recurso ante nuestra consideración.

**II.**

**-A-**

El Tribunal Supremo de Puerto Rico ha resuelto que, de conformidad con lo dispuesto por el Artículo 649 del Código de Enjuiciamiento Civil[15], "el auto de *mandamus* es un recurso

---

[12] *Reglas de Procedimiento Civil*, 32 LPRA AP. V, R. 36.1, 36.4 y 70.

[13] Véase *Mandamus* de ALC.

[14] Véase la Regla 7 (5) del Reglamento *del Tribunal de Apelaciones*, según enmendada, In Re Aprob. Enmda. Reglamento TA, 2025 TSPR 42, 215 DPR _____ (2025) y Entrada #92 de SUMAC, *Resolución Interlocutoria* del 29 de septiembre de 2025, que adjudica la *Moción en Solicitud de Sentencia Sumaria Parcial* del 8 de abril de 2025 presentada por ALC.

[15] 32 LPRA sec. 3421.

altamente privilegiado y discrecional que se expide para ordenar a cualquier persona natural, corporación o a un tribunal de inferior jerarquía que cumpla o ejecute un acto que forma parte de sus deberes y atribuciones"[16]. Dicho recurso únicamente procede cuando se exige el cumplimiento de un deber impuesto por la ley. Esto se refiere a un deber calificado de ministerial y que, por ende, no admite discreción en su ejercicio, sino que es mandatorio e imperativo[17]. Es decir, debe tratarse de "un mandato específico que la parte demandada tiene que cumplir y que no le permite decidir si cumple o no el acto solicitado"[18].

Por el contrario, "cuando la ejecución del acto o la acción que se describe depende de la discreción o juicio del funcionario, tal deber es considerado como no ministerial"[19]. Por consiguiente, al no ser ministeriales, los deberes discrecionales quedan fuera del ámbito del *recurso de mandamus*[20]. Además, cabe señalar que, al constituir un recurso altamente privilegiado, la expedición del auto de *mandamus* no procede como cuestión de derecho, sino que descansa en la sana discreción del tribunal[21]. En consecuencia, la expedición del auto de *mandamus* resulta improcedente si existe otro remedio adecuado en ley, ya que el propósito principal del auto no es remplazar remedios legales disponibles, sino suplir la falta de ellos[22].

Resulta menester reiterar que un *mandamus* puede ser considerado cuando la parte peticionaria no tiene disponible un

---

[16] *AMPR v. Srio. Educación, E.L.A.*, 178 DPR 253, 263 (2010).

[17] *Noriega v. Hernández Colón*, 135 DPR 406, 447-448 (1994); *Hernández Agosto v. Romero Barceló,* 112 DPR 407, 418 (1982); *Álvarez de Choudens v. Tribunal Superior*, 103 DPR 235, 242 (1975).

[18] *AMPR v. Srio. Educación, E.L.A.*, *supra*, a la pág. 264.

[19] *Íd.*, Véanse, además, *Díaz Saldaña v. Acevedo Vilá,* 168 DPR 359, 365 (2006); *Álvarez de Choudens v. Tribunal Superior, supra.*

[20] *AMPR v. Srio. Educación, E.L.A.*, *supra.*

[21] *Báez Galib y otros v. C.E.E. II*, 152 DPR 382, 391-392 (2000).

[22] *AMPR v. Srio. Educación, E.L.A.*, *supra*, a las págs. 266-267; *Hernández Agosto v. Romero Barceló, supra*; *Dávila v. Superintendente de Elecciones*, 82 DPR 264, 274 (1960).

recurso legal adecuado y eficaz en el curso ordinario de la ley[23]. La petición de *mandamus* tiene que evaluarse a la luz de varios requisitos. Estos son: (1) que el demandado tenga un deber u obligación ministerial impuesto por ley; (2) que el peticionario tenga un interés especial en el derecho que reclama; (3) que el deber de actuar de la agencia y el derecho del peticionario surjan de la ley de forma clara y patente; (4) que el peticionario no tiene otro remedio legal para hacer valer su derecho; (5) que, estimado el efecto que tendrá la expedición del auto, el Tribunal entienda que los fines de la justicia obligan a su expedición[24].

**-B-**

El principio de justiciabilidad requiere que los tribunales limiten su intervención para resolver controversias reales y definidas que afecten las relaciones jurídicas de partes antagónicas u opuestas[25]. Conforme a este principio, los tribunales sólo deben evaluar controversias que sean justiciables, es decir, no deben atender controversias hipotéticas, abstractas o ficticias[26].

Siendo esto así, nuestro ordenamiento jurídico reconoce la doctrina de academicidad, la cual es una manifestación del principio de justiciabilidad, pues, aunque se cumplan todos los criterios para que el caso se considere justiciable, si ocurren cambios en los hechos o el derecho durante el trámite judicial que conviertan en ficticia o académica su solución, los tribunales deben abstenerse en intervenir[27]. El propósito de la doctrina de academicidad "es evitar el uso inadecuado de los recursos judiciales y obviar precedentes innecesarios"[28].

---

[23] Véase, Artículo 651 del *Código de Enjuiciamiento Civil*, 32 LPRA sec. 3423.
[24] *Dávila v. Superintendente de Elecciones, supra*, a las págs. 274-275; véase, además, Artículos 649 al 651 del *Código de Enjuiciamiento Civil*, 32 LPRA secs. 3421-3423.
[25] *Pueblo v. Díaz Alicea*, 204 DPR 472, 481 (2020); *UPR v. Laborde Torres y otros I*, 180 DPR 253, 280 (2010).
[26] *Moreno v. Pres. UPR II*, 178 DPR 969, 973 (2010).
[27] *Torres Santiago v. Depto. Justicia, supra*, pág. 982.
[28] *Moreno v. Pres. UPR II, supra*, págs. 973-974.

Un caso es académico "cuando la cuestión en controversia pierde eficacia ante el paso del tiempo, ya sea porque ocurrieron cambios en los hechos o en el derecho, y la misma se vuelve inexistente"[29]. En otras palabras, un caso es académico cuando se intenta obtener: (1) un fallo sobre una controversia disfrazada o que no existe; o (2) una determinación sobre un derecho antes de que lo hayan reclamado; o (3) o una sentencia sobre un asunto que, al emitirse no podrá tener efectos prácticos sobre una controversia existente[30].

El Tribunal Supremo de Puerto Rico ha reconocido ciertas excepciones en la aplicación del principio de academicidad, esto es: "(1) cuando se plantea ante el foro judicial una cuestión recurrente o susceptible de volver a ocurrir y que tienda a evadir la revisión judicial; (2) cuando la situación de hechos ha sido modificada por el demandado, pero el cambio no aparenta ser permanente, y (3) cuando se tornan académicos aspectos de la controversia, pero subsisten consecuencias colaterales vigentes"[31]. Así, al evaluar la doctrina de academicidad y la aplicación de sus excepciones, los Tribunales debemos tomar en consideración "los eventos anteriores, próximos y futuros, y así determinar si la controversia entre las partes sigue viva y subsiste con el tiempo"[32].

### III.

Primordialmente, en su petición de *mandamus*, ALC alegó que incidió la Jueza De Jesús Machargo al no cumplir el deber ministerial impuesto en situaciones para adjudicar una moción de sentencia sumaria dentro del término de noventa (90) días. Por ello, nos solicita que se le ordene a la Jueza De Jesús Machargo adjudicar la *Moción en Solicitud de Sentencia Sumaria Parcial* en un término

---

[29] *Pueblo v. Diaz Alicea, supra.*
[30] *Torres Santiago v. Depto. Justicia,* s*upra,* pág. 982.
[31] *Pueblo v. Diaz Alicea, supra.*
[32] *Torres Santiago v. Depto. Justicia, supra,* págs. 982-983; *Pres. del Senado,* 148 DPR 737, 759 (1999).

no mayor de diez (10) días desde la notificación de la resolución de este Tribunal.

Sin embargo, surge del Sistema Unificado de Manejo y Administración de Casos (SUMAC) que, el 29 de septiembre de 2025[33], la Jueza De Jesús Machargo dictó una *Resolución* en la cual declaró *No Ha Lugar* la *Moción en Solicitud de Sentencia Sumaria Parcial* presentada por la parte peticionaria.

En vista de que la solicitud de ALC fue adjudicada, resulta improcedente en esta etapa emitir un auto de *mandamus* para ordenar lo ya concedido. Es evidente que la *Resolución* del 29 de septiembre de 2025 provocó un cambio en los hechos durante el trámite judicial del caso, lo cual tornó en académica la controversia presentada por la parte peticionaria y nos privó de jurisdicción.

## IV.

Por las razones antes expresadas, **desestimamos** el recurso de *mandamus* de epígrafe por académico[34].

**Notifíquese Inmediatamente**.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[33] Entrada #92 de SUMAC, *Resolución Interlocutoria.*
[34] Véanse las Reglas 83 (B) (5) y 83 (C) del Reglamento *del Tribunal de Apelaciones*, según enmendada, In Re Aprob. Enmda. Reglamento TA, 2025 TSPR 42, 215 DPR ____ (2025).